IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CHRISTOPHER FITZGERALD JONES,       )
                                    )
            Petitioner,             )
                                    )
      v.                            )        CR 122-075
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Christopher Fitzgerald Jones filed an original and amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Because Petitioner submitted an amended § 2255 motion, the Court **REPORTS** and **RECOMMENDS** the original § 2255 motion be **TERMINATED**. (Doc. no. 124.) Respondent moved to dismiss the amended § 2255 motion, and Petitioner filed his opposition. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the "motion for new discovery" be **TERMINATED**, (doc. nos. 162), and the motion for entry of default, "Extraordinary Motion to Dismiss Infringing Instrument Doc. 142," and motion for appointment of counsel be **DENIED**, (doc. nos. 136, 158, 164). The Court further **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 142), the amended § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 128), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    Background

### A.    Pretrial Proceedings

In an indictment returned on August 3, 2022, a grand jury in the Southern District of Georgia charged Petitioner with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  (Doc. no. 1.)  The Penalty Certification provided the maximum penalties as follows:  not more than ten years in prison, not more than a $250,000 fine, not more than three years of supervised release, and a $100 speciation assessment.  (Doc. no. 2.)  Retained attorney E. Timothy O'Brien filed his notice of appearance on August 15, 2022, and at the arraignment that same day, the Court set a pretrial motions filing deadline of August 29, 2022.  (Doc. nos. 9, 14.)  After receipt of a plea agreement on August 30, 2022, the Court scheduled a change of plea hearing for September 20, 2022.  (Aug. 30, 2022 dkt entry; doc. no. 15.)  Prior to that change of plea hearing, retained attorney Danny L. Durham also filed his notice of appearance.  (Doc. no. 16.)

At the September 20th hearing, Petitioner decided he did not want to enter a guilty plea, and the case was scheduled for a jury trial on November 1, 2022.  (Doc. nos. 20, 25.)  At the September 20th hearing, Respondent requested and received permission to file an out-of-time Fed. R. Evid. 404(b) notice because no such notice had been filed in reliance of Petitioner's initial return of a signed plea agreement.  (Doc. no. 21.)  The 404(b) notice announced Respondent's intention to offer evidence at trial, "under the theory that the evidence is intrinsic to the crimes charged or that it is so inextricably intertwined with [Petitioner's] charged offense[] that it should be admissible," about Petitioner arrest and prosecution in 2022RCCR14 in the Superior Court of Richmond County, Georgia, involving allegations from Deborah Paschal that Petitioner pointed a firearm at her on October 17, 2021.  (Id. at 1-2.)  The notice

also explained Respondent intended to introduce evidence of another allegation from Ms. Paschal that Petitioner pointed a handgun at her on September 16, 2021, as she ran to her vehicle and fired a shot into the ground.  (Id. at 2.)

The defense objected to the Rule 404(b) notice on the basis that the probative value of the evidence regarding Ms. Paschal's allegations would be substantially outweighed by unfair prejudice to Petitioner, and United States District Judge J. Randal Hall held a hearing on the matter.  (Doc. nos. 30, 47.)  Although there is no transcript of that pretrial hearing, the defense arguments were later described on the record as having nothing to do with relevance, but rather that the probative value was outweighed by undue prejudice. (Doc. no. 73, Sent. Tr., p. 6.) Judge Hall conditionally allowed some evidence related to Ms. Paschal's allegations, (Sent. Tr. 6), and Ms. Paschal was listed on Respondent's Witness List, (doc. no. 41).

Before trial, the parties stipulated that prior to Petitioner's alleged possession of a firearm on October 21, 2021, he "had been convicted of a felony offense, that is, an offense punishable by imprisonment for more than one year, and had knowledge of said conviction." (Doc. no. 35; see also doc. no. 74, Trial Tr., pp. 43, 132 (announcing stipulation to jury).)

### B.    Trial

During opening statements, Respondent identified the three elements of the charged offense that must be proven and explained how it would meet its burden to prove each element beyond a reasonable doubt.  Trial Tr. 57-58.  Specific to possession of the firearm, Respondent told the jury they would hear from the two arresting officers who were present when a firearm was found in Petitioner's back pocket on October 21, 2021, as well as from the officer who arrived on scene after the firearm had been recovered to photograph the weapon and make it safe.  Trial Tr. 58-59.  Mr. Durham's opening statement plainly laid out the road map for the

defense in his opening argument: the testifying officers were not credible because there was

no body worn camera ("BWC") video of the actual recovery of a firearm from Petitioner's

person. Trial Tr. 61-62.

> The evidence at trial showed the following:
>
> On October 21, 2021, officers with the Richmond County Sheriff's Office secured an arrest warrant for Jones and were in the process of obtaining a search warrant for his house. Two officers—Anthony Gregory and Lucas Heise— conducted surveillance in an unmarked police car outside Jones's house. They were watching to make sure that no one entered or exited the house.
>
> Gregory and Heise spotted Jones leave the house, enter his car, and drive away. The officers followed in their car. After driving about 20 feet, Jones stopped in the middle of the street and exited his car. In response, the officers stopped their car, turned on its patrol lights, and exited it. The officers, who were wearing body armor marked "Sheriff's Office," approached Jones with their guns drawn. The officers advised Jones that he was under arrest pursuant to a warrant. After handcuffing Jones, Gregory patted him down. He found a gun in Jones's back right pant pocket.
>
> At the time of the arrest, Gregory was wearing a body camera; Heise was not. Gregory did not turn his body camera on to record the arrest. Department policy did not require him to have the body camera during the arrest. And, according to Gregory, he neglected to turn it on because of how quickly and unexpectedly Jones stopped in the middle of the road.

United States v. Jones, No. 23-12028, 2024 WL 3666192, at *1 (11th Cir. Aug. 6, 2024) (*per*

*curiam*).

Indeed, both Gregory and Heise testified, subject to cross examination from defense

counsel, that Gregory recovered the firearm from Petitioner's back pocket. Trial Tr. 72, 98,

103. Gregory also provided a detailed explanation about department policy not requiring the

BWC to be turned on and explained why the quickly developing situation of Petitioner's "very

unusual" behavior of stopping his car in the middle of roadway, getting out, and standing next

to the vehicle in the absence of any activation of lights and sirens – coupled with knowing

Petitioner had an outstanding felony warrant – resulted in the BWC not being activated.  Trial Tr. 70, 73-74, 83.  Heise likewise testified criminal investigators do not always have a BWC, he did not have one on that day, and Petitioner's "not normal" and abrupt behavior of stopping the car in the middle of the road caused them to focus on officer safety during the execution of a felony arrest warrant.  Trial Tr. 95-97, 102; see also Trial Tr. 113-14 (Inv. Bale testifies to same policy that investigators not required to have on BWC).  Defense counsel vigorously cross-examined the officers, with a pointed focus on the failure to turn on an available BWC, but their explanations remained consistent.  Trial Tr. 81-83, 102, 113-14.

As to the remaining two elements of the offense, the parties stipulated prior to trial that Petitioner had been convicted of a felony offense punishable by imprisonment for more than one year and had knowledge of that conviction prior to the date of the conduct alleged in the indictment.  Trial Tr. 43, 132.  Special Agent Ricardo Prince of the Bureau of Alcohol, Tobacco, and Firearms also testified that the firearm recovered from Petitioner in Augusta, Georgia, was made in Exeter, New Hampshire, and therefore traveled in interstate or foreign commerce because it had to cross state lines to get from New Hampshire to Georgia.  Trial Tr. 124-25.  The government also entered into evidence via SA Prince's testimony, over Petitioner's objection, a certified conviction showing Petitioner had previously pleaded guilty to being in possession of a firearm by a convicted felon on April 15, 2021.  Trial Tr. 127-28.  Judge Hall specifically cautioned the jury that conviction may be considered in deciding whether Petitioner had the state of mind or intent to commit the crime charged in the federal indictment or whether he committed the charged acts by accident or mistake, but not as evidence of whether Petitioner engaged in the activity alleged in the indictment.  Trial Tr. 135-36.

In its closing argument, the government emphasized the quickly developing, unusual circumstances of Petitioner, with an outstanding felony warrant, stopping his car in the middle of the road and officers scrambling to draw their guns and effectuate the arrest. Trial Tr. 138-39. The government also argued Gregory and Heise had no reason to jeopardize their careers in which they've worked thousands of cases, to lie about Petitioner's "not that special" case. Trial Tr. 146. On the other hand, in his closing, defense counsel emphasized the lack of video evidence, repeatedly questioning the credibility of the officers because of the failure to record the recovery of the weapon from Petitioner. Trial Tr. 143-46.

Upon conclusion of the closing argument, Judge Hall next instructed the jury on the rules of law that must be used to decide the case, which included the elements of the charged offense, including a reminder the stipulation of fact (regarding Petitioner's knowledge of his prior felony conviction punishable by more than one year in prison) did not require any additional supporting evidence. Trial Tr. 153. Judge Hall also reminded jurors they were only to determine from the evidence whether Petitioner was guilty or not guilty of the crime charged in the indictment, possession of a firearm affecting interstate or foreign commerce by a person previously convicted of a felony offense. Trial Tr. 152. Judge Hall further explained if the jury wished to communicate with him, the foreperson should pass the message to the Court Security Officer but should never reveal the numerical vote of the jurors. Trial Tr. 155-56.

When the jury sent out a note indicating their numerical split that was not unanimous, after consulting with counsel and hearing no objection, Judge Hall provided a modified "Allen charge," which encouraged the jury to continue their deliberations in an effort to reach a unanimous decision. Trial Tr. 159; doc. nos. 48-1, 48-2. The jury later returned with a unanimous guilty verdict, as confirmed by public polling. Trial Tr. 161-65.

###### C.    Sentencing

The United States Probation Office prepared the Presentence Investigation Report ("PSI"), which provided for a Total Offense level of twenty-eight, a Criminal History Category of V, and a United States Sentencing Guidelines ("Guidelines") imprisonment range of 130 to 162 months.  PSI ¶¶ 28, 66.  The Total Offense level calculation included a two-point obstruction of justice increase under U.S.S.G. § 3C1.1 because Petitioner "threatened, intimidated, or otherwise unlawfully influenced a witness, Deborah Paschal, and demanded that she speak to the Richmond County District Attorney to get his charges dropped."  PSI ¶ 24.  The calculation also included a four-point increase for possessing a firearm in connection with the felonies of criminal damage to property and burglary.  PSI ¶ 21.  Because the statutory maximum penalty for Petitioner's offense of conviction is ten years, the Guidelines term of imprisonment was 120 months.  PSI ¶¶ 65, 66.

At sentencing, Judge Hall confirmed Petitioner and counsel had completed their review of the PSI and there was an outstanding written objection to the obstruction of justice enhancement because although Petitioner did "not dispute the facts as stated," Ms. Paschal was not a witness to Petitioner's federally charged offense of conviction for possession of a firearm, was not called as a witness during his federal trial, and was not present for Petitioner's arrest on October 21, 2021.  PSI Add.; Sent. Tr. 2-9.  After hearing argument from defense counsel, Judge Hall confirmed the obstruction conduct occurred between October 2021 and January 7, 2022, when Petitioner, and a fellow inmate acting at Petitioner's behest, called Ms. Paschal - a potential trial witness based on her presence during alleged criminal conduct by Petitioner resulting in state charges - and demanded she drop those state charges, charges which were the basis for the felony arrest warrant executed on October 21, 2021, during which the firearm

forming the basis for his federal charge was found in Petitioner's back pocket.  PSI ¶ 15; see also PSI ¶ 5 (Ms. Paschal reports Petitioner pointed a handgun at her and fired a round into the ground); PSI ¶ 6 (Ms. Paschal reports Petitioner pointed a firearm at her as she was leaving residence and was holed up inside her residence); PSI ¶ 7 (Ms. Paschal reports Petitioner had damaged and stolen property from her residence, resulting in issuance of state warrants for possession of firearm by convicted felon, pointing or aiming firearm at another, criminal damage to property, and burglary); and Sent. Tr. 7-8 (explaining why Ms. Paschal's testimony "was in play in this trial").

Judge Hall also confirmed law enforcement was looking for Petitioner when he was arrested on October 21, 2021, as a result of the conduct which he was attempting to have Ms. Paschal disavow when he called her from jail.  Sent. Tr. 4-5.  Judge Hall further observed he had previously determined that at least some of the incidents involving Ms. Paschal were relevant evidence that could have been admitted had the government elected to enforce its subpoena and call Ms. Paschal as a witness at trial.  Sent. Tr. 6-7.  Thus, Judge Hall overruled the objections and concluded "that the conduct that [Petitioner] engaged in when threatening Ms. Paschal rises to the level of obstruction as it relates to, really, the investigation, potential prosecution of the instant offense."  Set. Tr. 8-9.  After overruling the only objection, Judge Hall adopted the factual statements in the PSI as the Court's findings of fact and adopted the Guidelines calculations.  Id. at 9.

When given the opportunity to address the Court, Petitioner noted his disagreement with the four-point enhancement for possession of a firearm during a burglary because he was

never convicted of burglary in state court.  Sent. Tr. 10.  Judge Hall explained under the Guidelines, because he was arrested and charged with burglary, regardless of whether a conviction was obtained, he possessed a firearm in connection with additional felony offenses - indeed, the offenses which were the basis for the warrants pursuant to which Petitioner was being arrested when found to be in possession of the firearm underlying his federal conviction - and therefore, the enhancement applied.  Sent. Tr. 10-12; PSI ¶¶ 6, 7.  When Petitioner expressed his attorneys had not answered all of his questions about the PSI, Judge Hall asked if he had any other questions, to which Petitioner responded, "No sir."  Sent. Tr. 12-13. Petitioner chose not to provide any other statement to the Court prior to sentencing.  Sent. Tr. 13-14.

Judge Hall imposed a sentence of 120 months in prison, three years of supervised release, a $1,500 fine, and a $100 special assessment.  Sent. Tr. 14-15; doc. no. 61.

### D.    Direct Appeal

Post conviction, Petitioner moved to proceed *pro se* based on a breakdown in communications and a desire to raise an ineffective assistance of counsel claim, but Judge Hall denied that request, explaining matters of representation were now within the purview of the Court of Appeals, and if Petitioner wanted to proceed *in forma pauperis* on appeal and have counsel appointed for him, he must file a motion pursuant to Addendum Four (d)(2) of the Eleventh's Circuit Plan Under the Criminal Justice Act.  (Doc. nos. 65, 84, 86.)  Mr. Durham and Mr. O'Brien ended up filing Petitioner's appeal, raising two issues:  sufficiency of the evidence and alleged error regarding the two-point enhancement obstruction of justice enhancement.  (Doc. no. 142-1, p. 6.)

The Eleventh Circuit affirmed the conviction, finding the record "replete" with evidence Petitioner possessed the firearm.  Jones, 2024 WL 3666192, at *3.  Recognizing Petitioner's credibility challenge to the officers' testimony, the Eleventh Circuit concluded such credibility determinations are left to the jury unless the testimony "is incredible as a matter of law," meaning the testimony "relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature."  Id. (citation omitted).  The appellate court determined that the testimony of Gregory and Heise about finding the firearm on Petitioner and the reason why no BWC had been activated was not incredible as a matter of law.  As to the remaining elements of the offense, the Eleventh Circuit noted the government introduced evidence the firearm had traveled in interstate commerce, (Trial Tr. 124-25), and the parties stipulated Petitioner had been convicted of a felony and knew about that conviction.  Jones, 2024 WL 3666192, at *1 & n.1.  Petitioner's conviction was affirmed.  Jones, 2024 WL 3666192, at *3.

As to the obstruction enhancement, the Court of Appeals likewise affirmed, explaining a "defendant engages in obstruction when he attempts to threaten or intimidate a witness" during the "course of the investigation, prosecution, or sentencing of the offense of conviction or a closely related offense."  Id.  And while the government has the "burden of introducing sufficient and reliable evidence," over a defendant's factual objection, "to prove the necessary facts by a preponderance of the evidence," facts in the PSI are undisputed and "deemed to be admitted unless a party objects to them before the sentencing court with specificity and clarity."  Id. (citations omitted).  Moreover, the PSI described the threats, (PSI ¶ 15), and because Petitioner failed to object to that description, the sentencing court properly treated those facts as undisputed and could rely on them at sentencing without the government having

to provide further evidentiary support in the form of playing the recordings of the threatening calls or calling Ms. Paschal to testify about the threats. Jones, 2024 WL 3666192, at *4.  Thus, there was no error in applying the obstruction enhancement.  Id.

While the appeal was pending, Petitioner filed a rash of *pro se* motions and notices alleging various errors at trial and seeking his release pending appeal.  (See, e.g., doc. nos. 88, 92, 97-99, 101, 105, 107, 110, 113, 116, 117, 122).  Judge Hall denied and/or terminated these motions filed by Petitioner, finding the allegations "border[ed] on the absurd," were manifestly without merit," (doc. no. 96, p. 1), were at issue in the pending appeal, (doc. no. 111, p. 2), or must be brought through a motion to vacate, set aside, or correct his sentence under § 2255, (doc. no. 123, p. 2).

**E.     § 2255 Motion**

Petitioner now asserts his retained counsel provided constitutionally ineffective assistance in twelve different ways:

(1)    failing to review the PSI with Petitioner prior to sentencing;

(2)    failing to "take advice" from Petitioner and inform Petitioner "with important documents that dictated the ultimate decision" on his sentence;

(3)    failing to raise "proper objections" at sentencing regarding a Guidelines enhancement for possession of a firearm during the commission of a burglary;

(4)    violating the attorney-client privilege by discussing Petitioner's charges with an unidentified member of counsel's family, leading to charges at the federal level that would have been dropped at the state level;

(5)    violating Petitioner's right to remain silent at sentencing by stating there was no dispute about the facts in the PSI when counsel had not actually reviewed the PSI with Petitioner;

(6)    misinforming Petitioner during the plea discussions he faced a fifteen-year mandatory minimum sentence when Petitioner expressed his desire to proceed to trial;

11

(7)     failing to "grant the wishes" of Petitioner with respect to filing motions to compel BWC footage and to suppress evidence from a search of his residence, as well as not objecting to the "incredible" testimony of the investigators on these points;

(8)     failing to object to the search of Petitioner's residence after his arrest that was based on a faulty state search warrant;

(9)     failing move to compel production of the threatening phone calls to Petitioner's girlfriend that were detailed in paragraph 15 of the PSI and used as a basis to enhance his sentence for obstruction of justice;

(10)    failing to object to the investigator's testimony on the basis of needing to wait to see if Petitioner's girlfriend would testify at trial when they knew the girlfriend was paying their fees and would not testify against him;

(11)    misleading Petitioner that they were excellent criminal attorneys when they were actually civil attorneys and simply wanted to avoid any repercussions from violating the attorney-client privilege by discussing Petitioner's charges with an unidentified member of counsel's family; and

(12)    abandoning their representation of Petitioner on the state charges that were used to enhance his federal sentence.

Petitioner also raises the following grounds for relief based on the conduct of the prosecutor and Judge Hall, as well as the calculation of his sentence:

(13)    The prosecutor slandered Petitioner during closing arguments by calling him "no one special";

(14)    The prosecutor presented misleading evidence by allowing the investigators to testify they were not required to activate a BWC for the arrest and by not presenting at trial the video of the search of his residence subsequent to the arrest;

(15)    The prosecutor allowed investigators to testify there was no BWC video footage when he knew it had existed at one point, but had been damaged;

(16)    Judge Hall was sleeping during the trial and therefore was at "high risk" of missing crucial evidence;

(17)    The jurors were misled when Judge Hall would not accept their deadlocked position and instead directed them to return to their deliberations;

(18)    The prosecutor used unidentified "illegal evidence" to bring the case against Petitioner;

(19)    The prosecutor harassed Petitioner's girlfriend by subpoenaing her to testify at trial after she said she did not want to appear;

(20)    The prosecutor improperly advocated for an obstruction of justice enhancement on Petitioner's sentence without producing any evidence of the threats to his girlfriend;

(21)    Petitioner was indicted under 18 U.S.C. § 922(g), but was improperly sentenced for a conviction under §§ 924(a) and/or 924(c);

(22)    The prosecutor presented false expert testimony that Petitioner was found in possession of a firearm and that Petitioner "travel[led] with the firearm in interstate commerce";

(23)    The prosecutor presented "incredible" testimony from the investigators that they did not know anything about the state charges underlying the basis for Petitioner's arrest on October 21, 2021, and misrepresented no damaged BWC video existed;

(24)    Because there was no BWC video presented that showed investigators recovering a gun from Petitioner, there was insufficient evidence to convict him;

(25)    Petitioner's sentence was improperly calculated with an increased Guidelines score based on a twenty-year-old sentence for aggravated assault, as well as unproven burglary and possession of a stolen firearm charges and obstruction of justice allegations;

(26)    The probation officer "mislead the Court" by calculating a Guidelines range in the PSI based on the errors identified in ground 25;

(27)    Judge Hall failed to verify Petitioner had reviewed the substance of the PSI with counsel prior to sentencing;

(28)    Petitioner was improperly sentenced based on unproven charges and allegations of prior wrongdoing;

(29)    Judge Hall improperly enhanced Petitioner's sentence without submitting the charges and allegations used as sentencing enhancements to a jury;

(30)    Judge Hall imposed an excessive fine and restitution;

(31)    The cumulative error of counsel's ineffectiveness and improper calculation of his sentence requires Petitioner's conviction and sentence be overturned; and

(32)    Petitioner's sentence should not have included a special assessment, restitution, electronic monitoring, and three years of supervised release.

(Doc. no. 128.)  As relief, Petitioner requests his conviction and sentence be vacated.  (Id. at 23.)

## II.    Discussion

### A.    No Evidentiary Hearing or Appointment of Counsel Required

Although the Court directed the parties to treat the "amended" § 2255 motion as the operative pleading, (see doc. no. 130), the Court recognizes the title of Petitioner's original § 2255 motion included a request for an evidentiary hearing.  (Doc. no. 124, p. 1.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted); Ivory v. United States, No. 23-10123, -F.4th-, 2025 WL 2811091, at * 5 (11th Cir. Oct. 3, 2025) (same).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Ivory, 2025 WL 2811091, at *5; Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required. Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015) (per curiam). When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008); see also Campbell v. United States, 743 F. App'x 412, 416-18 (11th Cir. 2018) (per curiam) (affirming district court's rejection without hearing of ineffective assistance claim in investigating and litigating motion to suppress). Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

As to the request for appointment of counsel, there is no automatic constitutional right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (per curiam) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985). Although under 18 U.S.C. § 3006A(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under § 2255, such requests are discretionary when "due process or the 'interests of justice'" so require. Hooks, 775 F.2d at 1438; Norris v. Wainwright,

588 F.2d 130, 133 (5th Cir. 1979)[1]; see also 28 U.S.C. § 2255(g) and Rule 8(c) of the Rules

Governing Section 2255 Cases in the United States District Courts (authorizing appointment

of counsel pursuant to 18 U.S.C. § 3006A).  Not only has Petitioner failed to submit any

financial paperwork in support of his request for appointed counsel, but as no evidentiary

hearing is necessary, Petitioner's motion for appointment of counsel to represent him at a

hearing should be denied.  (Doc. no. 164.)

### B.    Claims in Grounds Twenty and Twenty-For Were Previously Considered and Rejected by the Eleventh Circuit Court and Form No Basis for Relief

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are

entitled to presume he stands fairly and finally convicted, especially when . . . he already has

had a fair opportunity to present his federal claims to a federal forum."  United States v. Frady,

456 U.S. 152, 164 (1982).  Consequently, "[o]nce a matter has been decided adversely to a

defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."

Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citation omitted); see also

United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (same); White v. United States,

371 F.3d 900, 902 (7th Cir. 2004) ("[W]e do not see how a federal prisoner--who must file his

motion for relief under 2255 in the very court that convicted him--can be allowed to do so if

all he is doing is rehashing a claim that had been rejected on the direct appeal.").

Nor will the Court reconsider a previously raised claim where it is merely a re-

characterization of an issue raised on direct appeal.  Nyhuis, 211 F.3d at 1343.  That is, to

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

obtain review in this § 2255 proceeding of a previously raised claim, Petitioner would have to show an intervening change of law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

Here, Petitioner argued on direct appeal:  (1) there was insufficient evidence to support his conviction; and (2) the district court erred at sentencing in applying a two-point obstruction of justice enhancement.   Jones, 2024 WL 3666192, at *1-*2.   In particular, Petitioner challenged the sufficiency of the evidence to convict him for possession of a firearm, arguing Gregory's and Heise's testimony about finding a firearm in his back pocket was inherently untrustworthy and not credible because there was no BWC evidence showing the discovery of the firearm. Id. at *3.  The Eleventh Circuit rejected the argument, pointing out "credibility determinations are left to the jury unless testimony 'is incredible as a matter of law.'"  Id. Recognizing "testimony is only incredible if it relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature," the Eleventh Circuit ruled the officers' testimony about finding the firearm in Petitioner's back pocket and the reason for not turning on the BWC were not incredible as a matter of law.  Id.

As to the two-point obstruction of justice enhancement, under the Guidelines, a defendant's offense level will be increased by two levels if he "willfully obstructed or impeded or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and the "obstructive conduct related to" either the "offense of conviction and any relevant conduct" or "a closely related offense."  U.S.S.G. § 3C1.1.  The appellate court explained a "defendant engages in obstruction when he attempts to threaten or intimidate a witness."  Id. (citing

U.S.S.G § 3C1.1 cmt n.4(A).  If a defendant objects to the factual basis for the enhancement, the government must introduce "sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." Jones, 2024 WL 3666192, at *3.  Unless a party objects with specificity and clarity to facts in the PSI prior to sentencing, those facts are undisputed and deemed admitted such that the sentencing court can base its findings of fact on the undisputed statements in the PSI.  Id. (citation omitted).  The Eleventh Circuit found the following in affirming application of the obstruction of justice enhancement:

> Here, [Petitioner] threatened his girlfriend to try to intimidate her into recanting her report to police.  We agree with the district court that this obstructive conduct occurred during the investigation or prosecution of an offense that was closely related to his firearms offense.  [Petitioner] threatened his girlfriend to get her to withdraw her reports that he had pointed a gun at her and destroyed her property.  It was based on these reports that police had obtained a warrant for his arrest.  And when officers arrested [Petitioner] on October 21 pursuant to this warrant, they found the firearm.  Because [Petitioner's] obstructive conduct related to a closely related offense, we conclude that the district court properly applied the obstruction enhancement.

Id. at *4.  Moreover, the government was not required to play the recordings of the threatening calls or call his girlfriend to testify about the threats because the PSI described the threats, and Petitioner "did not dispute the facts as stated" in the PSI.  Jones, 2024 WL 3666192, at *4; see also PSI ¶ 15;  PSI Add.; Sent. Tr. 2-10; United States v. Aguilar-Ibarra, 740 F.3d 587, 592 (11th Cir. 2014) (failing to specifically and clearly object to factual statements in PSI is admission upon which sentencing court may rely "even in the absence of supporting evidence").

The Eleventh Circuit rejected both alleged errors on appeal, and Petitioner does not argue any intervening change in the law, let alone a retroactive change in the law that would render appellate consideration of Petitioner's claims incorrect as a matter of constitutional law

or a complete miscarriage of justice. See Stoufflet, 757 F.3d at 1242. Rather, in Grounds Twenty and Twenty-Four, he simply rehashes the legal arguments already rejected on direct appeal regarding application of the obstruction of justice enhancement and insufficiency of evidence, an approach which does not entitle Petitioner to relief. See Nyhuis, 211 F.3d at 1343 ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."). Therefore, these two Grounds form no basis for relief.

> **C.    Petitioner's Claims in Grounds Thirteen through Twenty-Three, and Twenty-Five through Thirty-Two, Are Procedurally Defaulted and/or Otherwise Unsupported by Specific, Particularized Facts Showing Petitioner Is Entitled to Relief**

> **1.    Procedural Default and the Exceptions**

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused." Seabrooks v. United States, 32 F.4th 1375, 1383 (11th Cir. 2022) (per curiam). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Guidelines are not generally cognizable on collateral attack. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*). However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings, Massaro v. United States, 538 U.S. 500, 509 (2003).

Therefore, other than an ineffective assistance of counsel claim, for the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains. Brown, 720 F.3d at 1333; Montano, 398 F.3d at 1280. "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). An ineffective assistance of counsel claim may serve as "cause" for failing to raise an otherwise procedurally barred claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may

grant the writ even in the absence of a showing of cause for the procedural default."

<u>Montano</u>, 398 F.3d at 1280 (quoting <u>Murray</u>, 477 U.S. at 496).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 395 (2013) (internal quotations and citation omitted).

Petitioner has not introduced any new, reliable evidence in these proceedings, let alone any such evidence showing it is more likely than not no reasonable juror would have convicted him.  Indeed, Petitioner's arguments focus on his interpretation of the record as it existed at the time of trial.  Nor can Petitioner satisfy the demanding actual innocence standard because he has presented no evidence to support his conclusory assertions the officers offered false testimony at trial.  Thus, the Court focuses its analysis for procedurally barred claims on cause and prejudice.  Although, as noted above, an ineffective assistance of counsel claim may serve as "cause" for failing to raise an otherwise procedurally barred claim, <u>Murray</u>, 477 U.S. at 488, as discussed in detail herein, Petitioner has not presented any meritorious ineffective assistance claims.

### 2.    Heightened Pleading Requirement for § 2255 Claims

The Eleventh Circuit has explained "the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading' as authorized under Federal Rule of Civil Procedure 8(a)" and recognizes the Supreme Court has also observed "[h]abeas corpus petitions must meet heightened pleading requirements."  <u>Borden v. Allen</u>, 646 F.3d 785, 810 (11th Cir. 2011) (citing <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994)).

> To properly fact plead, a petitioner must state specific, particularized facts, which entitle him or her to habeas corpus relief for each ground specified.

> These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.

Arrington v. Warden, No. CV 117-022, 2017 WL 4079405, at *2 (S.D. Ga. Sept. 14, 2017) (Hall, J.); see also McFarland, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements.").

The requirement for fact-specific pleading applies with equal force for ineffective assistance of counsel claims. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient."); Oliver v. Wainwright, 795 F.2d 1524, 1531 (11th Cir. 1986) (per curiam) (claiming counsel "failed to investigate facts merely states the general principles of law on the subject without making specific reference to any deficiency" fails to state any constitutional claim); Williams v. United States, 457 F. Supp. 3d 1240, 1250 (M.D. Fla. 2020) ("A petitioner is not entitled to . . . habeas relief when his claims are merely conclusory allegations unsupported by specifics. . . . " (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)); Arrington, 2017 WL 4079405, at *5 (requiring petitioner claiming ineffective assistance of counsel to connect facts to law rather than merely alleging "counsel should have done things differently"); Trejo v. United States, No. 2:16CV647-MHT, 2019 WL 4597256, at *4 (M.D. Ala. Aug. 15, 2019) (denying relief where petitioner provided "no specifics whatsoever as to how [counsel] performed deficiently, or how he was prejudiced as a result of their allegedly deficient performance."), adopted by 2019 WL 4580386 (M.D. Ala. Sept. 20, 2019).

### 3. Grounds Thirteen through Twenty-Three, and Twenty-Five through Thirty-Two, Form No Basis for Relief

In Ground Thirteen, Petitioner alleges the prosecutor "invited prejudice" by telling the jury to convict Petitioner because he was "no one special." (Doc. no. 128, p. 13.) This claim is barred from review because it was not raised on appeal, and Petitioner has not shown cause and prejudice for failing to raise it. In any event it is meritless, as an examination of the trial transcript shows that in response to the defense argument that the officers' testimony about recovering a firearm from Petitioner was not to be believed, (Trial Tr. 143-46), the prosecutor argued the officers had no reason to lie under oath in an attempt to frame Petitioner because the original arrest was not their case and they would not jeopardize their careers and risk going to jail for an individual who "is not that special" amongst the thousands of cases they had worked. Trial Tr. 146. It is well-settled a prosecutor "is entitled to make a fair response to the arguments of defense counsel," and therefore, "issues raised by a defendant in closing argument are 'fair game for the prosecution on rebuttal.'" United States v. Reeves, 742 F.3d 487, 505 (11th Cir. 2014) (citations omitted). In any event, as the Eleventh Circuit determined the record was "replete" with evidence of Petitioner's guilt, Jones, 2024 WL 3666192, at *3, Petitioner has not shown this rebuttal argument affected his substantial rights because he has not shown a reasonable probability that but for the government's challenged remark, the outcome of the trial would have been different, Reeves, 742 F.3d at 506. This defaulted, but also meritless, claim forms no basis for relief.

In Grounds Fourteen, Fifteen, and Twenty-Three, Petitioner challenges the absence of BWC video footage, alleging without any factual support, that video of both the arrest and a subsequent search of a residence existed at some point but sustained water damage. (Doc. no.

128, pp. 14, 16.)  Thus, according to Petitioner, the prosecutor "invited prejudice" by allowing the officers to testify at trial that there was no video of arrest and failing to show the video of a subsequent search of a residence.  (Id.)  As described in Part II(B) above, the Eleventh Circuit already rejected Petitioner's challenge to the credibility of Gregory's and Heise's testimony about the absence of BWC video regarding the arrest, and Petitioner may not relitigate that issue now.  Petitioner does not  provide any support for his claim of water damage to any BWC video that may have existed, but to the extent he complains about the spoilation of video evidence of the search of a residence, he fails to connect this unsupported factual assertion to the law relevant to his conviction for possession of a firearm.  Rather, Petitioner complains there was testimony about Gregory wearing a BWC that he generally employs for the execution of a search warrant so that a jury can see the environment being searched (doc. no. 146, p. 2 (citing Trial Tr. 83, 86-87); see also doc. no. 90, pp. 2-3 (alleging video of illegal search damaged and absence of video requires finding officers' trial testimony not credible)), but this acknowledged video of the search of a residence was not shown at trial.  (Doc. no. 146, pp. 2-3).  Petitioner suggests the illegality of the search of the residence, combined with the alleged water damage to the video, shows that the government used untrustworthy testimony that cannot be believed to support his conviction.  (Doc. no. 128, pp. 16-17.)

To the extent Petitioner's claims of spoilation of evidence related to officer credibility were not raised and rejected on direct appeal, they are barred from review now.  Petitioner's lack of factual support for these conclusory claims also means he cannot show cause and prejudice to excuse his failure to raise them on direct appeal.  In any event, showing a video of a search of a residence would not prove that Gregory was required to turn on BWC his for an arrest, as was explained at trial.  Trial Tr. 73-74, 82, 87.  Likewise, Petitioner's assertion

that Investigator Daryl Oehrlein, the lead investigator on the underlying state case, told defense counsel about water damage to "the evidence in that case," (doc. no. 147, pp. 1-2), does not provide necessary factual detail about what that evidence was. Nor does it show there was BWC video of the arrest to make the trial testimony incredible. Indeed, as described above, Gregory testified about why he usually runs his BWC for the execution of a search warrant, but the search of the residence conducted as part of the underlying state case was not the source of the evidence for Petitioner's federal prosecution, *i.e.*, the firearm discovered in Petitioner's back pocket. (See doc. no. 151 (discussing damaged video in relation to allegedly illegal search of residence and "receiving and retrieving $13,500 in cash").)

Nor is there any connection between the allegedly missing $13,500 discovered during the search of a residence, (doc. no. 146, p. 2), and Petitioner's conviction for a firearm discovered in his back pocket. Indeed, the seizure of $13,500 was not presented as part of the government's case. Finally, Gregory and Heise testified their job on the day of the arrest was surveilling Petitioner's location, who had outstanding felony warrants, while Investigator Oehrlein sought an additional warrant to search the residence. Trial Tr. 66-67, 94. They did not need to know any details beyond the existence of felony warrants that required appropriate precautions during any potential arrest. Trial Tr. 94. Petitioner has not provided any factual support for his claim that Gregory and Heise knew anything about the details of Investigator Oehrlein's underlying case, let alone has he shown what any such knowledge had to do with undermining his conviction for possessing the firearm found in his back pocket. Thus, these defaulted, meritless claims form no basis for relief.

In Ground Sixteen, Petitioner alleges Judge Hall fell asleep during the trial and was at "high risk" of missing crucial evidence. (Doc. no. 128, p. 14.) Petitioner again provides no

factual detail about what portion of the trial Judge Hall allegedly slept through, let alone does he identify any missed issues because of the alleged sleeping. In response to Respondent's assertion no details of the claim had been provided, Petitioner claimed Judge Hall slept through "multiple parts" because he did not comment on the prosecutor mentioning a witness's newborn child, (Trial Tr. 104), or on the prosecutor's comment to the jury that he wished he could go into more detail about the events that occurred before the day of Petitioner's arrest, (doc. no. 146, p. 4). Notably, however, Petitioner does not explain how the failure to comment on a congratulatory remark about the birth of a baby, or on a comment the prosecutor did not make about events prior to the October 21st arrest show that Judge Hall was sleeping, let alone that he missed making "crucial" rulings. Even if this meritless claim were not defaulted because Petitioner failed to raise it on direct appeal, the speculative and conclusory nature of the claim – unsupported by any factual detail supporting a finding of an alleged legal error – cannot show cause and prejudice, and in any event, would form no basis for relief in these proceedings.

In Ground Seventeen, Petitioner alleges the government "invited prejudice" because the "young" and "naïve" jurors were misled into believing the Court could not accept their deadlocked position, and Judge Hall should not have instructed the jury to continue deliberating pursuant to a modified charge under Allen v. United States, 164 U.S 492 (1896), to continue its deliberations. (Doc. no. 128, p. 15.) Petitioner provides no factual or legal support for this defaulted claim, and in fact, the Eleventh Circuit has approved the practice so long as a coercive charge is not given. See United States v. Rey, 811 F.2d 1453, 1459-60 (11th Cir. 1987). Petitioner does not challenge the charge given as coercive, only that it should not have been given at all. Moreover, his contention the defense was unaware of the jury's note

and Judge Hall's instruction to keep deliberating, (doc. no. 128, p. 15), is clearly belied by the record. Trial Tr. 159-60. The claim forms no basis for relief.

In Ground Eighteen, Petitioner alleges the government used unidentified "illegal evidence" against him, but he does not identify any "fruit of the poisonous tree evidence," let alone does he point to any such evidence that was used to indict him or introduced against him at trial. (Doc. no. 128, p. 15.) Petitioner's complaints about an illegal search of his residence on the day of his October 21st arrest do not undermine his federal conviction, as no evidence from the search of his residence was introduced against him at trial. Even if this meritless claim were not defaulted because Petitioner failed to raise it on direct appeal, the speculative and conclusory nature of the claim – unsupported by any factual detail – cannot show cause and prejudice. In any event, the claim forms no basis for relief in these proceedings because Petitioner has not explained how this unidentified evidence had any impact on, or relevance to, his conviction. To the extent this claim could be liberally construed as relating to evidence used to bring state charges against Petitioner that were ultimately dismissed yet used to enhance his federal sentence, those allegations are extensively analyzed elsewhere in this recommendation with respect to Petitioner's sentencing claims.

In Ground Nineteen, Petitioner alleges the government harassed his girlfriend, Ms. Paschal, by issuing her a subpoena to testify against Petitioner when she said she would not do so. (Id.) Not only does Petitioner fail to provide any factual detail concerning the impact on his case of issuing a witness subpoena, but the government did not call Ms. Paschal as a witness. Thus, Petitioner's concern that the government "would have allowed incredible testimony" because the prosecutor knew Ms. Paschal had dropped her allegations against Petitioner with respect to state charges is not only conclusory and speculative but irrelevant to

27

obtaining a conviction on the federal gun charge, the prosecution of which Ms. Paschal had no control. And in any event, Ms. Paschal did not testify, so any potential testimony upon which this claim is based never came to fruition, meaning it could not have had any impact on his conviction. Thus, even if this meritless claim were not defaulted because Petitioner failed to raise it on direct appeal, the speculative and conclusory nature of the claim – unsupported by any factual detail – cannot show cause and prejudice, and in any event, would form no basis for relief in these proceedings.

As discussed above, to the extent Ground Twenty challenges the application of the obstruction of justice enhancement under the Guidelines, that claim has been raised and rejected at the Eleventh Circuit and is barred from consideration now. To the extent the claim could be liberally construed to apply to the four-point enhancement for possession of a firearm in connection with another offense, namely the state burglary and/or criminal damage to property charges for which Ms. Paschal submitted a Victim's Request to Dismiss, (PSI ¶¶ 16, 21), Petitioner fails to provide any factual detail to support such a claim. (Doc. no. 128, p. 16.) In any event, when Petitioner raised the issue at sentencing that he had received the four-point enhancement although he had never been convicted of burglary, Judge Hall and the probation officer explained that under the Guidelines, Petitioner was eligible for the enhancement regardless of whether there was a conviction because the firearm was possessed in connection with the additional felony. Sent. Tr. 10-13; see also United States v. James, 135 F.4th 1329, 1334 (11th Cir. 2025) (explaining broad interpretation of U.S.S.G. § 2K2.1(b)(6)(B) allows for application of four level enhancement in felon in possession case that did not have associated conviction for additional felony upon which enhancement based).

As to the charge for criminal damage to property rather than the burglary charge, the same explanation applies, that is, Petitioner need not have been convicted of the charge to be eligible for the enhancement. And the government only need prove eligibility for the enhancement by a preponderance of the evidence. United States v. Kinard, 472 F.3d 1294, 1298 (11th Cir. 2006) (*per curiam*). Petitioner does not contest he was charged with burglary or criminal damage to property, only that he was never convicted. Petitioner cannot show cause and prejudice, and this meritless claim does not form any basis for relief. For the sake of completeness, the Court observes that because Petitioner's sentence on the felon in possession conviction did not exceed the statutory maximum of ten years, any new sentencing claim is not properly before the Court in these § 2255 proceedings. See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid.")

Petitioner's allegation in Ground Twenty-One that he was indicted for one count of violating 18 U.S.C. § 922(g) but impermissibly convicted for an additional charge of violating 18 U.S.C. § 922(a) forms no basis for relief. (Doc. no. 128, p. 16.) The indictment confirms Petitioner was indicted for one count of possession of a firearm by a prohibited person, in violation of § 922(g)(1). (See doc. no. 1.) The jury verdict confirms the jury found Petitioner guilty of the one count charged in the indictment. (See doc. no. 44.) Judge Hall announced at the start of the sentencing hearing Petitioner was found guilty of the one count charged under 18 U.S.C. § 922(g)(1), and sentenced Petitioner in accordance with the ten-year statutory maximum for violating § 922(g)(1). The Judgment in a Criminal Case confirms Petitioner was

adjudicated guilty of the one count charged in the indictment. (See doc. no. 61, p. 1.) There is simply no factual support for Petitioner's assertion he was improperly sentenced on multiple counts of conviction. To the extent the judgment lists 18 U.S.C. § 924(a)(2), (doc. no. 61, p. 1), there is no count of conviction listed, and that section contains the statutory maximum penalty for the one count upon which Petitioner was convicted. See PSI ¶ 65. Petitioner cannot show cause and prejudice, and this meritless claim does not form any basis for relief.

In Ground Twenty-Two, Petitioner asserts the government "invited prejudice" because there was no evidence Petitioner possessed a firearm or traveled with a firearm in interstate commerce. (Doc. no. 128, p. 16.) As discussed above, the claim that the testimony from Gregory and Heise was unbelievable and insufficient to support the conviction for possession of a firearm was raised and rejected on direct appeal and may not be relitigated here. To the extent Petitioner raises the new argument that the government expert's testimony did not show Petitioner "travel[led] with the firearm in interstate commerce," (id.), it is defaulted and in any event, without merit. As Judge Hall explained, the government had to prove three elements to obtain a conviction: (1) knowing possession of a firearm in or affecting interstate commerce; (2) before possessing the firearm Petitioner had been convicted of a felony, a crime punishable by imprisonment for more than one year; and (3) at the time of possession, Petitioner knew he had previously been convicted of a felony. Trial Tr. 152-53. The commerce element of the statute "requires the government to demonstrate that the firearm possessed traveled in interstate commerce." United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001) (per curiam). The statute does not require a showing that a defendant in a felon in possession case possessed the firearm while moving in interstate commerce, only that the firearm crossed state lines. United States v. Folk, 754 F.3d 905, 917 (11th Cir. 2014). Here,

30

ATF Special Agent Prince testified the firearm found in Petitioner's back pocket was manufactured in Exeter, New Hampshire, and therefore, the firearm traveled across state lines to be recovered from Petitioner's pocket in Georgia. Trial Tr. 124-25. That is all that is required to satisfy the commerce element. Folk, 754 F.3d at 917-18. The Eleventh Circuit agreed the government had "introduced evident showing that the firearm had traveled in interstate commerce." Jones, 2024 WL 3666192, at *1 & n.1. Petitioner cannot show cause and prejudice, and this meritless claim does not form any basis for relief.

In Grounds Twenty-Five and Twenty-Six, Petitioner first reiterates his alleged errors with respect to calculating his Guidelines sentence by including a two-point obstruction of justice enhancement and a four-point enhancement for possession of a firearm in connection with another felony offense. (Doc. no. 128, pp. 17-18.) As discussed above, the obstruction of justice enhancement was raised and rejected at the Eleventh Circuit, and the Court has already discussed and rejected herein Petitioner's claim regarding the Guidelines enhancement based on his state burglary charge that did not result in a conviction.

Petitioner also expands his allegations of error with never before raised allegations with respect to setting his base offense level at 20 based on a twenty-year-old conviction for a crime of violence (aggravated assault) and a two-point enhancement for possession of a stolen firearm. (Id.); see also PSI ¶¶ 19, 20. Petitioner offers no factual explanation to support his otherwise defaulted claims, and he therefore cannot satisfy the cause and prejudice standard. In any event, the meritless claims provide no basis for relief.

As to the two-point enhancement for possession of a stolen firearm, (PSI ¶ 20), the firearm recovered from Petitioner's back pocket was reported stolen in Richmond County in May 2013, and was charged as theft by receiving stolen property as part of the underlying state

case, 2022 RCCR00219.  PSI ¶¶ 9, 48.  Under U.S.S.G. § 2K2.1(b)(4)(A), if any firearm was stolen, a two-point enhancement is applied.  Given every opportunity to ask any question about application of the Guidelines, (Sent. Tr. 13), Petitioner never challenged or questioned the enhancement for possession of a stolen firearm, and Petitioner does not contend the government failed to meet its burden of establishing application of the enhancement by a preponderance of the evidence.  See Kinard, 472 F.3d at 1298.  Petitioner's only argument that he did not possess a stolen firearm is tied to the assertion the officers never found a firearm in his back pocket.  As the jury found and the Court of Appeals affirmed, the evidence supports the conclusion the firearm was found in Petitioner's back pocket, and therefore the two-point enhancement was properly applied.  To the extent Petitioner mentions "destroyed" evidence in relation to this enhancement, Petitioner does not explain what evidence was allegedly destroyed, (doc. no. 128, p. 17), or how such evidence impacts the Guidelines calculations.  At best, the Court infers Petitioner is again referring to video evidence he claims sustained water damage, but as discussed above, he has not explained the relationship of video evidence of a search to his arrest or make the showing there was BWC video of the arrest such that the trial testimony about the reason for the absence of an arrest video could be viewed as incredible.

Likewise, Petitioner provides no explanation as to why his aggravated assault conviction, (PSI ¶ 38), does not qualify as a crime of violence, warranting a base offense level of twenty.  Under U.S.S.G. § 2K2.1(a)(4)(A), the base offense level is set at twenty if a defendant with a firearm charge committed the offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."  Petitioner does not deny the aggravated assault conviction; he simply claims without explanation that a conviction in Georgia for aggravated assault is not a crime of violence.  The Eleventh Circuit has ruled

otherwise. United States v. Glenn, No. 19-13249, 2021 WL 4618075, at *3 (11th Cir. Oct. 6, 2021) (*per curiam*) (affirming base offense level of twenty under U.S.S.G. § 2K2.1(a)(4)(A) because Georgia conviction for aggravated assault involving firing a gun qualified as "crime of violence"). As explained in the PSI, (¶ 38), and set forth by the Georgia Court of Appeals, the aggravated assault conviction was based on a February 4, 2006 incident where Petitioner became angry with his then-girlfriend and hit her with his fists and then a handgun, as well as later fired a handgun at a car parked outside the house where she was inside. Jones v. State, 739 S.E.2d 43, 44 (Ga. Ct. App. 2013). Petitioner's conviction for aggravated assault, battery, criminal damage to property in the second degree, and possession of a firearm during the commission of a crime was affirmed on appeal. Id. Thus, there is no question about the existence of the aggravated assault conviction supporting calculation of the base offense level. In sum, these sentencing claims in Grounds Twenty-Five and Twenty-Six, even if not barred or defaulted, are meritless and form no basis for relief.

In Ground Twenty-Seven, Petitioner alleges Judge Hall failed to confirm at sentencing that he had reviewed the PSI. (Doc. no. 128, p. 18.) This claim was not raised on direct appeal and is therefore defaulted. In any event, the assertion is belied by the record. At the outset of the sentencing hearing, Judge Hall asked both sides if they had completed their review of the PSI, specifically asking the defense, "Mr. Durham and Mr. O'Brien, have you and Mr. Jones completed your review of the report?" Mr. O'Brien responded, "Yes, Your Honor, we have." Sent. Tr. 2. Petitioner did not disagree. When later given the opportunity to directly address Judge Hall and ask any questions, Petitioner asked "about one of the enhancement after I looked at my PSR" and did not agree with the burglary enhancement or the explanation provided by his attorney. Sent. Tr. 9-10. Moreover, after Judge Hall explained the basis for

the burglary enhancement and Petitioner stated there had been a lack of communication with his attorneys, Judge Hall again prompted him to ask any other questions he had. Sent. Tr. 12-13. Petitioner stated he had no other questions. Sent. Tr. 13. When defense counsel explained he had visited Petitioner numerous times but he perhaps had a problem understanding how the Guidelines work in federal court, Petitioner did not disagree or otherwise have anything else to say. Sent. Tr. 13. Petitioner cannot meet the cause and prejudice standard, and even if the claim were not defaulted, it is without merit.

In Ground Twenty-Eight, Petitioner makes a general, conclusory statement, unsupported by any factual detail, that his case was not "properly adjudicated" and his sentence was enhanced based on alleged offenses that were not presented to a jury. (Doc. no. 128, p. 18.) "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Arrington, 2017 WL 4079405, at *2. Petitioner provides no information about any particular problem with his prosecution, and this vague and conclusory allegation provides no basis for relief. Cf. McFarland, 512 U.S. at 856. To the extent Petitioner again complains about the enhancements applied to his Guidelines calculation, he does not identify to which of the multiple enhancements already raised and rejected above he refers. Moreover, as has also been discussed herein, disputes concerning application of the Guidelines are generally not cognizable in § 2255 proceedings absent a "fundamental defect" when a petitioner can prove actual innocence or that a prior conviction use to enhance his sentence has been vacated. Spencer, 773 F.3d at 1139. Petitioner has done neither, and this claim provides no basis for relief.

Although the lack of factual detail in Ground Twenty-Nine makes it difficult to determine the exact nature of the claim, it appears to be another variation of challenging

sentencing enhancements based on conduct for which no conviction had been obtained.  (Doc. no. 128, p. 18.)  As explained above, the government need only prove the application of a Guidelines enhancement over factual objection by a preponderance of the evidence.  United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013); Kinard, 472 F.3d at 1298.  Here, Judge Hall determined the government met its burden as to both the enhancement for obstruction of justice and possession of a firearm in connection with another felony offense dismissed at the state level.  Sent. Tr. 2-13; see also PSI ¶¶ 6, 7, 15, 47, 48.  Petitioner's reference to submitting charges to a jury to determine guilt and his reliance on United States v. Livar, 108 F.4th 738 (9th Cir. 2024) (per curiam), in support of his argument are unavailing. Not only is Livar a non-binding Ninth Circuit case, but that case required a determination whether a defendant who had entered a guilty plea but committed a new offense before sentencing was still entitled to the benefit of a promised sentence recommendation under the Guidelines without a finding of guilt on the new offense; it was not determining applicability of a particular Guidelines provision to calculation of the defendant's sentence.  Petitioner cannot show cause and prejudice, and this meritless claim does not form any basis for relief.

In Grounds Thirty and Thirty-Two, Petitioner raises new claims challenging the terms of his supervised release, as well as the statutorily mandated special assessment, fine and restitution imposed.  (Doc. no. 128, pp. 18, 19.)  In Ground Thirty, Petitioner does not identify which of the three-pages of conditions governing his supervision upon his release to which he objects, (see doc. no. 61, pp. 3-5), but in Ground Thirty-Two he does specifically challenge supervision by electronic monitoring, (doc. no. 128, p. 19).  Petitioner does not provide any factual detail about his fine or ability to pay, and in fact, there was no restitution or electronic monitoring ordered.  (Doc. no. 61, pp. 3-6.)  Judge Hall previously explained the Court did not

impose restitution, but rather imposed a fine, and he explained the rationale under the applicable statutes and Guidelines provision for imposing a $1,500 fine, even though Petitioner's offense of conviction carries with it a fine of not more than $250,000. (See doc. no. 148.) For the sake of completeness, the Court also notes challenges to restitution, had any such restitution been imposed, are not cognizable in § 2255 proceedings. See Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) (per curiam). Likewise, courts have ruled challenges to fines are not proper in a § 2255 motion because such claims do not relate to a prisoner claiming the right to be released as stated in the plain language of § 2255. Id. (citing United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994) ("A convicted defendant who receives an allegedly erroneous fine because of constitutionally inadequate assistance of counsel cannot seek post-conviction relief under §2255 and neither should a petitioner who is both fines and imprisoned have the opportunity to assert an identical fine-related claim under § 2255.")).

The Court presumes electronic monitoring refers to electronic monitoring of Petitioner's movement via an ankle monitor. No such condition was imposed. To the extent Petitioner meant to object to the condition allowing searches of his computers, other electronic communications, or data storage devices or media, (doc. no. 61, p. 5), he fails to provide any detail upon which such an objection is made. Such vague claims do not form the basis for habeas relief. See Arrington v. Warden, No. CV 117-022, 2017 WL 4079405, at *2. Likewise, contrary to Petitioner's argument in his opposition to the motion to dismiss, (doc. no. 144, p. 8), the judgment does not impose one year of home confinement after completion of the 120-month prison term, (see doc. no. 61). Petitioner's failure to provide any factual

detail means he cannot establish cause and prejudice, and he has provided no specific alleged error for the Court to consider. As such, the claims form no basis for relief.

In Ground Thirty-One, Petitioner summarizes all of his claims and asserts a claim that the cumulative effect of all of the errors raised requires that his sentence and conviction be vacated. (Doc. no. 128, p. 19.) However, as discussed herein, Petitioner has not raised any valid claims of error, and therefore his claim of cumulative error fails. See United States v. Ahmed, 73 F.4th 1363, 1384 (11th Cir. 2023); United States v. Buckner, 808 F. App'x 755, 766 (11th Cir. 2020) (per curiam) (citing United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011) and United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984)).

### D.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Petitioner also raises twelve grounds of alleged ineffective assistance of counsel. The Court addresses each in turn.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would

not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Id. at 1317. Rather, "Strickland permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course. LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014). That is, counsel is not required to "pursue every path until it bears fruit or until all

available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (citing Strickland, 466 U.S. at 692-93).

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

### 1.   Pre-Trial Claims

#### a.   Grounds Four and Eleven:  Attorney-Client Privilege

In Ground Four, Petitioner alleges ineffective assistance because defense counsel violated the attorney-client privilege by discussing Petitioner's charges with an unidentified member of counsel's family, allegedly somehow resulting in elevation of state charges, which would have been dropped, to the federal charge for which Petitioner was convicted.  (Doc. no. 128, p. 9.)  Of course, state and federal charges are completely separate matters, and a state may prosecute an individual under state law, even if the federal government prosecutes the person for the same conduct under a federal statute, and vice versa.  See Gamble v. United States, 587 U.S. 678, 681 (2019).  Thus, the charging decisions by state and federal officials

40

are separate, and there is no explanation how the actions of defense counsel morphed state charges into a federal charge that should have disappeared once the state charges were dismissed.

Moreover, there is no factual detail about the family member, their profession, or their alleged connection to federal law enforcement, let alone how any charging decision on state charges had any bearing on a federal charging decision. Indeed, after this lack of detail was pointed out by Respondent, Petitioner admitted he had no details about the claim, instead asking that defense counsel be ordered by the Court to provide this information missing from Petitioner's motion. (Doc. no. 147, p. 1.) Petitioner, not the Court, is responsible for providing the details supporting his claims.

In the related Ground Eleven, (doc. no. 128, p. 13), Petitioner alleges ineffective assistance because retained defense counsel mislead him into believing they were excellent criminal attorneys when they were actually civil attorneys who simply wanted to avoid negative repercussions from the alleged violation of the attorney-client privilege discussed in Ground Four. There is no factual detail about this alleged deception or any connection to a specific aspect of counsel's performance during trial, let alone detail about how counsel's alleged handling of the attorney-client privilege would have changed the outcome of the federal case. Petitioner alleges counsel conceded this alleged criminal inexperience at sentencing, (doc. no. 128, p. 13), but he points to no portion of the sentencing transcript memorializing any such statement, and the Court could find no such statement. Moreover, both Mr. Durham and Mr. O'Brien have appeared in multiple criminal cases before this Court, further undercutting the factually unsupported claim by Petitioner. These conclusory claims

do not show any deficient performance by counsel, let alone prejudice, as required by Strickland and form no basis for relief.

### b.   Ground Six:  Plea Offer Discussions

In Ground Six, Petitioner alleges defense counsel misinformed him during plea negotiations that he qualified for a fifteen-year minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and therefore Petitioner should accept a plea deal for 100 months of imprisonment.  (Doc. no. 128, p. 10.)  Petitioner lost trust in his retained attorney because he did not qualify for an ACCA sentence, and he told his attorney he wanted to go to trial.  (Id.)  Even if his attorney provided incorrect information about Petitioner's eligibility for an ACCA sentence, Petitioner cannot show prejudice.  By his own admission, he was able to resolve any confusion over his eligibility for an ACCA sentence.  That Petitioner lost trust in his retained attorney does not establish Strickland prejudice, as he was not forced to plead guilty, and did in fact go to trial with the retained defense team of his choice.  Petitioner has shown no connection between this alleged pretrial information about his sentencing exposure and the eventual guilty verdict and sentence, which did not include an ACCA enhancement.  As Petitioner cannot satisfy both prongs of Strickland, this claim forms no basis for relief.

### 2.   Trial Claims

### a.   Grounds Seven and Eight:  Failure to File Requested Motions

In Grounds Seven and Eight, Petitioner alleges ineffective assistance because his attorneys did not file a motion regarding the alleged spoilation of BWC video or a motion to suppress evidence obtained during the search of his residence.  (Doc. no. 128, p. 11.)  As discussed above with respect to Grounds Fourteen, Fifteen, and Twenty-Three, Petitioner

provides no details suggesting any motion related to water damaged video evidence or an allegedly illegal search of his residence after the arrest, during which the firearm for which he was convicted was discovered in his back pocket, would have been successful or relevant to his case. Nothing in the record evidence shows there was any damaged or withheld evidence of the arrest; indeed, the Eleventh Circuit specifically ruled it was the province of the jury to weigh the credibility of the officers and their explanation for the lack of video evidence of the arrest. Moreover, there is no dispute Gregory and Heise had a valid arrest warrant, which they executed on a public street, at the time of the arrest.

To show an attorney's choice of strategy is unreasonable, a petitioner must show no competent counsel would have made such a choice. Strickland, 466 U.S. at 690, 691; Puiatti, 732 F.3d at 1279-80; Waters, 46 F.3d at 1512; Devier, 3 F.3d at 1450. Petitioner fails to do so. Indeed, he fails to show either motion would have changed the outcome of trial. His conclusory assertions to the contrary are not sufficient. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted); Pio v. United States, No. 13-23666-CIV, 2014 WL 4384314, at *3 (S.D. Fla. Sept. 3, 2014) (same) (citing cases). Petitioner fails to satisfy either prong of Strickland on these claims, and he is not entitled to relief.

### b.    Ground Ten:  Failure to Object to Trial Testimony

In yet another reiteration of the oft raised claim that the trial testimony from Gregory and Heise was incredible, a proposition raised and rejected at the Eleventh Circuit, Petitioner claims ineffective assistance based on counsel's refusal to more strenuously object to the officers' testimony until finding out if the government would call Ms. Paschal as a witness. (Doc. no. 128, p. 12.) Petitioner does not explain how defense counsel could control the

43

government's decision about which witnesses to call.  Nor does he explain what objections defense counsel should have made.  Trial strategy, including how to question or cross-examine witnesses, as well as which objections to raise, is entitled to significant deference.  See Strickland, 466 U.S. at 691; Waters, 46 F.3d at 1512; Devier, 3 F.3d at 1450.  Petitioner has not established defense counsel's trial strategy on how to attack the officers' credibility was objectively unreasonable.  See Surles v. United States, CR. No. 1:08-345 / CV No. 1:12-3510, 2016 WL 675382, at *3 (N.D. Ga. Jan. 25, 2016) (denying relief on ineffective assistance claim based on challenge to examination of witness and making objections at trial, as those topics are trial strategy owed deference), adopted by 2016 WL 1388037 (N.D. Ga. Apr. 8, 2016).

Moreover, "the jury has exclusive province over [the credibility] determination." United States v. Johnson, 645 F. App'x 954, 961 (11th Cir. 2016) (per curiam) (citing United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999)); see also Castle v. Sangamo Weston, Inc. 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact.").  The Eleventh Circuit affirmed this principle and that the jury retained that decision in this case because the officers' testimony was not incredible as a matter of law.  Jones, 2024 WL 3666192, at *3.  Petitioner insists if only his unspecified questions or objections had been raised in the manner he preferred, the outcome would have been different.  But the Sixth Amendment does not require unlimited inquiry into potential witness bias in any way demanded by a defendant.  Cf. Johnson, 645 F. App'x at 962.  Rather constitutional demands are satisfied when sufficient facts are exposed to allow a jury to draw inferences regarding credibility, including any motive to lie.  Id.  Defense counsel made questioning the credibility of Gregory and Heise the cornerstone of the defense at trial and consistently attempted to undermine their testimony about finding the firearm in

Petitioner's pocket.  Trial Tr. 61-62, 81-85, 102, 115-16, 143-46.  Thus, Petitioner has satisfied neither prong of <u>Strickland</u>, and he is not entitled to relief on this claim.

### 3. Sentencing Claims

### a. Ground One:  Failure to Review PSI

In Ground One, Petitioner alleges ineffective assistance because defense counsel did not review the PSI with him so that he could prepare "proper" objections.  (Doc. no. 128, p. 5.)  Petitioner's argument that he was not provided a copy of the PSI before trial is a non-starter, (doc. no. 144, p. 3), as the PSI is not prepared until after trial.  Indeed, at the conclusion of the trial, Judge Hall announced the probation office would prepare a PSI and provide a copy to the defense and the prosecution.  Trial Tr. 166.  As discussed in detail above with respect to Ground Twenty-Seven, Judge Hall confirmed at sentencing that defense counsel and Petitioner had reviewed the PSI.  Sent. Tr. 2.  Later in those proceedings, Petitioner specifically asked Judge Hall about a four-point burglary enhancement, (PSI ¶ 21), and when Petitioner told Judge Hall there a been a lack of communication with counsel, Judge Hall prompted Petitioner to ask any questions he had.  Sent. Tr. 12-13.  Petitioner identified no other questions and did not dispute counsel's statement that counsel had visited Petitioner numerous times but found there to be some problems with understanding how the federal Guidelines work.  Sent. Tr. 13.  Moreover, as discussed repeatedly herein, none of the challenges to the Guidelines calculations now raised by Petitioner have merit.  Petitioner cannot satisfy both prongs of <u>Strickland</u>, and he is not entitled to relief on this claim.

**b.    Ground Two:  Failure to Take Advice and Inform Petitioner about Important Documents**

In Ground Two, Petitioner alleges ineffective assistance because his counsel failed to take unspecified advice from him and failed to inform him about "important documents that dictated the ultimate decision" on his sentence.  (Doc. no. 128, p. 6.)  Petitioner provides no factual detail regarding the advice he attempted to give his attorneys or what important documents about which he was not informed.  Petitioner confirmed at sentencing he had reviewed the PSI – indeed discussed various details about the application of a sentencing enhancement with Judge Hall – and was encouraged by counsel to raise any issues he had about sentencing with Judge Hall.  Sent. Tr. 10-13.

Petitioner has not demonstrated defense counsel's strategy was objectively unreasonable based on the information available to them.  Indeed, the problem with conclusory claims such as this one is the lack of detail.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information.

Strickland, 466 U.S. at 691.  Petitioner does not explain what information was provided but ignored, and the record reflects Petitioner reviewed the PSI prior to sentencing, and to the extent he had any questions, had the opportunity to raise them to Judge Hall.  Sent. Tr. 2, 10-13.  Not only has Petitioner failed to establish counsel's actions fell below an objective standard of reasonableness with respect to this claim, but he has also failed to show he suffered any prejudice.  This conclusory claim does not meet either prong of Strickland and forms no basis for relief.

### c. Ground Three: Failure to Object to Four-Point Enhancement For Possessing a Firearm During the Commission of a Burglary

In Ground Three, Petitioner alleges ineffective assistance based on counsel's failure to file "proper objections" regarding his four-point enhancement to his Guidelines calculation although he had never been convicted of burglary. (Doc. no. 128, p. 7.) As discussed in detail above with respect to the portion of Ground Twenty that was not raised and rejected at the Eleventh Circuit, Petitioner was eligible for the enhancement regardless of whether there was a conviction because the firearm was possessed in connection with the additional felony. Sent. Tr. 10-13; see also James, 135 F.4th at 1334. Petitioner fails to show counsel's failure to raise an objection to the four-point enhancement was a choice no competent counsel would have made. See Strickland, 466 U.S. at 690. Nor has he shown there was a reasonable probability the outcome of his sentencing would have been different such that he was prejudiced, see id. at 694, as it has been explained herein the enhancement was properly applied. There can be no prejudice from failing to raise a meritless issue. Winfield, 960 F.2d at 974. As Petitioner has satisfied neither prong of Strickland, this claim forms no basis for relief.

### d. Ground Five: Violation of Right to Remain Silent Based on a Failure to Review PSI

In Ground Five, Petitioner again raises the issue of an alleged failure to review the PSI as the basis for ineffective assistance. (Doc. no. 128, p. 10.) Despite counsel raising at sentencing an objection based on the two-point enhancement for obstruction of justice, and despite having the opportunity to discuss all of his sentencing questions directly with Judge Hall, Petitioner asserts he was not aware of anything in the PSI. (Id.) In essence, he is arguing his counsel misspoke on his behalf when they stated they did not "dispute the facts as stated"

in the PSI. As discussed extensively above, the record reveals Petitioner represented to Judge Hall that he had reviewed the PSI with counsel prior to sentencing, and to the extent he had any questions or objections that were not raised, he had the opportunity to do so with Judge Hall at sentencing. Sent. Tr. 10-13. Moreover, Petitioner has not identified any meritorious issues that could have been raised if any particular facts had been disputed.

Indeed, Petitioner has not identified any basis for objecting to any facts in the PSI. Even as to the challenge to the obstruction of justice enhancement, Petitioner argues in the main that it should not have applied to him. Counsel argued against the application at sentencing, and had the objection been made about taking evidence on the phone calls, the record does not suggest an inability to produce the evidence. As explained above, the government need only prove application of a disputed enhancement by a preponderance of the evidence. See Kinard, 472 F.3d at 1298. The government states in its response to Petitioner's § 2255 motion that the phone calls were provided to defense counsel in discovery and related reports. (Doc. no. 142, p. 14.) Moreover, paragraph 15 of the PSI contained the dates, names of those involved, and threatening content of the phone calls. As to the remaining enhancements Petitioner challenges, he challenges the legal basis for their application. That is, he argues he was not convicted of burglary, but as described herein, a conviction is not necessary for the enhancement to apply. He does not argue the existence of a prior aggravated assault conviction, but instead contests the legality of whether that conviction qualifies as a crime of violence. See discussion, *supra*, Grounds Twenty (not raised to Eleventh Circuit), Twenty-Five, Twenty-Six.

In sum, not only has Petitioner failed to show counsel's choice not to object to the facts as stated in the PSR was a choice no competent counsel would have made, but he also fails to

establish prejudice.  See Strickland, 466 U.S. at 690, 694.  Thus, Ground Five forms no basis for relief.

        **e.**        **Ground Nine:  Failure to File Motion to Compel Threatening Phone Calls**

Petitioner alleges ineffective assistance in Ground Nine based on an alleged failure to compel production of the threatening phone calls used to support the two-point obstruction of justice enhancement; Petitioner asserts he had "no knowledge" of the basis for the government alleging he had made threats to his girlfriend. (Doc. no. 128, p. 12.)  As discussed immediately above, the phone calls were provided to defense counsel in discovery and related reports.  (See doc. no. 142, p. 14.)  Moreover, the PSI detailed the dates and names of persons on the calls, along with quotes of the threatening language.  PSI ¶ 15.  Thus, not only did defense counsel have the recordings and thus need not compel their production, but Petitioner fails to show counsel's choice to focus on arguing the legal merits of the applicability of the obstruction of justice enhancement, rather than focus on arguing an evidentiary technicality, is one that no reasonable attorney would make.  See Strickland, 466 U.S. at 690.  Nor has he shown any prejudice because the attorneys did have the recordings as part of the discovery package.  Id. at 694.  Thus, this claim forms no basis for relief.

        **4.**        **Ground Twelve:  Representation on State Law Claims**

In Ground Twelve, Petitioner alleges he received ineffective assistance from defense counsel during their representation of him in state court because they ceased to represent him after a retainer had been paid, and those cases were eventually used against him to enhance his federal sentence. (Doc. no. 128, p. 13.)  According to Petitioner, he was forced to proceed in state court with a public defender, who managed to get both of his state cases dismissed.  (Id.)

Petitioner offers no details about the circumstances under which counsel ceased their representation or the timeline of the state proceedings with respect to his federal trial and sentencing, but even if the Court were to assume for the sake of arguments that no reasonable attorney would have withdrawn, Petitioner cannot satisfy the prejudice prong of Strickland. That is, he cannot show there is a reasonable probability that but for the withdrawal in state court, the result of his federal trial or sentencing would have been different.  Indeed, he reports the state charges were dismissed after he obtained new counsel, and as discussed repeatedly above, application of the enhancements under the Guidelines which Petitioner now contests did not depend upon obtaining a conviction in state court.  As Petitioner has not shown the relevance of his representation in state court to his federal proceedings, and even if he could, has not shown prejudice, this Ground forms no basis for relief.

### E.    Remaining Miscellaneous Motions

Petitioner made several filings which were docketed as motions even though they actually consist of briefing in support of his claims or opposition to the government's motion to dismiss.  For example, in the "Extraordinary Motion to Dismiss Infringing Instrument Doc. 142," Petitioner asks the Court to dismiss the entirety of Respondent's motion to dismiss because Petitioner does not like, or agree with, the reasoning offered in the motion to dismiss as to why Petitioner is not entitled to relief on Ground Thirteen, regarding certain comments made by the prosecutor during closing arguments.  (Doc. no. 158.)  Herein, the Court has thoroughly considered the arguments presented by both sides on each of Petitioner's thirty-two claims.  While Petitioner is entitled to disagree with Respondent's arguments, his disagreement forms no basis for dismissal of the entirety of Respondent's motion to dismiss, and his "Extraordinary Motion" should be denied.

In the "Motion for New Discovery," Petitioner requests the Court "enter this motion for new discovery as evidence supporting claims in amend[ed] 28 U.S.C. § 2255 motion to vacate in the above-style case." (Doc. no. 162.) The document then reiterates Petitioner's arguments, thoroughly discussed and rejected herein, that his Guidelines sentence should not have been enhanced based on state charges that were eventually dismissed, and his counsel was ineffective for "letting" the enhancements be applied. The Court has thoroughly considered Petitioner's arguments on this point. To the extent Petitioner also requests the Court consider that he requested an amendment to his PSI based on his interpretation of the how the Guidelines should be applied, Judge Hall already ruled that motion was premature because the § 2255 proceedings had not concluded. (See doc. no. 163.) As the Court has thoroughly considered the arguments presented the "motion for new discovery," it should be terminated.

Finally, Petitioner also requested default be entered against Respondent for not timely responding to his amended § 2255 motion. (Doc. no. 136.) According to Petitioner, Respondent's request for an extension of time to respond to Petitioner's motion was invalid, and thus, the Court's Order granting the extension was of no effect. This argument was already rejected by the Court in its Order dated January 31, 2025, which confirmed Respondent's response was due by February 13, 2025. (See doc. no. 137.) On February 12, 2025, the Court granted a final extension of time through and including March 6, 2025, for Respondent to file its response. (See doc. no. 139.) The motion to dismiss was filed March 6th. (Doc. no. 142.) Thus, there is no basis for entering default against Respondent, and the motion should be denied. In any event, default judgments are not contemplated in habeas corpus cases. See Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987).

## III.    Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the original § 2255 motion and "motion for new discovery" be **TERMINATED**, (doc. nos. 124, 162), and the motion for entry of default, "Extraordinary Motion to Dismiss Infringing Instrument Doc. 142," and motion for appointment of counsel be **DENIED**, (doc. nos. 136, 158, 164).  The Court further **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 142), the amended § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 128), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 17th day of October, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA